UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MILTON THOMPSON,

                **Plaintiff,**

           v.                                     9:08-CV-37
                                                     (FJS/DEP)

DARWIN LACLAIR, Superintendent; A. MCKEE,
Correctional Officer; and N. IRWIN, Lieutenant,

                **Defendants.**

---

**APPEARANCES**

**MILTON THOMPSON**
97-A-1874
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff *pro se*

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

      The Clerk of the Court has sent Plaintiff Milton Thompson's civil rights complaint, his application to proceed *in forma pauperis*, and a fully executed inmate authorization form to the Court for its review. *See* Dkt. Nos. 1-3. Plaintiff has also filed a motion for injunctive relief.[1]

      In his *pro se* complaint, Plaintiff alleges, among other things, the denial of a

---

[1] The Court notes that Plaintiff has failed to submit his motion for injunctive relief in the form that the Court's Local Rules require. Specifically, he has neglected to file a memorandum of law in support of his motion. *See* L.R. 7.1(a), (f). In light of the lack of clarity surrounding Plaintiff's application and his *pro se* status, the Court will overlook this deficiency and will consider Plaintiff's motion for a temporary restraining order at this time.

constitutionally cognizable liberty interest without having been afforded procedural due process, as required under the Fourteenth Amendment to the United States Constitution, cruel and unusual punishment in violation of his rights under the Eighth Amendment, and a third cause of action, denominated as the second, based upon the loss of certain of his property and the denial of an internal claim for reimbursement to compensate him for that loss.  *See, generally,* Complaint ("Dkt. No. 1").  Plaintiff's due process claim, the sole cause of action implicated in his motion for injunctive relief, stems from an August 2007 disciplinary hearing that resulted in a finding of guilt and the imposition of a penalty of thirty days in keeplock confinement with a corresponding loss of recreation, package, commissary, and phone privileges.  *See id.*

## II. DISCUSSION

A.   *In forma pauperis* **application**

After reviewing Plaintiff's *in forma pauperis* application, *see* Dkt. No. 2, and in light of his filing of a signed inmate authorization form, the Court finds that Plaintiff may properly proceed with this matter *in forma pauperis*.

B.   **Injunctive relief**

In support of his motion for injunctive relief, Plaintiff alleges that, as a result of his confinement in the special housing unit ("SHU"), he was removed from an Alcohol Substance Abuse Treatment program ("ASAT") before he completed that program.[2]  *See* Dkt. No. 4.

---

[2] According to Plaintiff's complaint, the disciplinary keeplock sanction also caused his expulsion from an Aggression Replacement Training program ("ART") shortly before its

(continued...)

Plaintiff requests that the Court direct Defendants to expunge his record regarding the disciplinary penalty and credit him for the five-and-one-half months of the ASAT program that he completed prior to his confinement in keeplock and, presumably, further direct Defendants to permit him to complete the program as soon as possible. *See id.*; *see also* Dkt. No. 1 at 10 (requesting that Plaintiff receive credit for all the time that he invested in the ASAT program and be permitted to complete that program). To establish that he will suffer irreparable harm, absent the injunctive relief he seeks, Plaintiff states that he is due to appear before the New York State Parole Board in February, 2008, at which time he will be required to demonstrate that he has completed the ASAT program or risk denial of parole. *See* Dkt. No. 4.

The standard that a court must use when considering whether to grant a request for injunctive relief is well-settled in this Circuit. To warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *See D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (quotation omitted).

### 1. Irreparable harm

Where an alleged deprivation of constitutional harm is involved, courts generally do not require that the party seeking injunctive relief make a further showing of irreparable harm. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (quotation and other citations omitted). In

---

[2](...continued)
completion. *See* Dkt. No. 1 at 9.

this case, Plaintiff alleges that, in spending thirty days in the SHU as a result of his disciplinary infraction, he lost the five-and-one-half months of credit he earned while he was enrolled in the ASAT program and was unable to complete that program. According to Plaintiff, he is due to appear before the New York State Parole Board in February, 2008, and his failure to complete the ASAT program may result in the denial of parole. Accepting Plaintiff's allegations as true **for the sole purpose of considering this motion**, the Court finds that, to the extent that Plaintiff might be denied parole because of his failure to complete the ASAT program as a result of his thirty-day SHU confinement in August, 2007, the Plaintiff **may** suffer irreparable harm related to his alleged due process claim should the Court deny his request for injunctive relief.[3]

### *2. Likelihood of success on the merits or sufficiently serious questions regarding the merits and a balance of hardships tipping decidedly toward Plaintiff*

Even assuming, for the sake of argument, that a movant has established the possibility of irreparable harm, a party is not entitled to the issuance of interim injunctive relief absent proof of the likelihood of succeeding on the merits of a claim or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *See Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (citation omitted).

In the present case, Plaintiff has submitted only his own affidavit containing his request for injunctive relief and outlining briefly the reasons why he believes the Court should grant his

---

[3] The Court makes **no** finding at this time that Plaintiff has **actually** suffered irreparable harm.

request. Based upon the Court's review of these materials, in conjunction with Plaintiff's complaint, it is evident that the record lacks any proof that Plaintiff is likely to succeed on the merits of his due process claim or any evidence that establishes sufficiently serious questions going to the merits of that claim and a balance of the hardships tipping distinctly toward Plaintiff.

Plaintiff's motion for injunctive relief is rooted in his claim that he was denied a constitutionally cognizable liberty interest without being afforded the procedural due process that the Fourteenth Amendment requires. To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both possessed an actual liberty interest and that he was deprived of that interest without being afforded sufficient process.[4] *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (quotation omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (citation omitted); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996) (citation omitted)

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest, a plaintiff must sufficiently demonstrate that the State actually created a protected liberty interest in being free from segregation and that the segregation would impose

---

[4] Although Plaintiff argues primarily that he possessed and was deprived of an actual liberty interest, he fails to disclose the nature of the insufficient process he received during the course of his disciplinary hearing, as the second prong of the relevant inquiry requires. The Supreme Court articulated the contours of the procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest in *Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974), that is, (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; (3) a written statement from the hearing officer explaining his decision and the reasons for the action being taken; and (4), in some circumstances, the right to assistance in preparing a defense. *See id.*; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988). Given Plaintiff's lack of allegations regarding the nature of the process violated, the Court makes no finding as to whether the procedural requirements of the Fourteenth Amendment were met under *Wolff* during the course of Plaintiff's hearing.

an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. Since the prevailing view is that by its regulatory scheme New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor, *see, e.g., LaBounty v. Coombe*, No. 95 CIV 2617, 2001 WL 1658245, *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-985, 2001 WL 118598, *6 (N.D.N.Y. Feb. 6, 2001), the Court must determine whether the conditions of Plaintiff's SHU confinement as alleged rise to the level of an atypical and significant hardship under *Sandin*. If they do not, then Plaintiff is not likely to succeed on the merits of his due process claim.

Atypicality in a *Sandin* inquiry is normally a question of law.[5] *See Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including an analysis of both the length and conditions of confinement. *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a detailed explanation of this analysis is not necessary. *See Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

Although not the only factor to be considered, the duration of a disciplinary keeplock

---

[5] In cases in which there is a factual dispute concerning the conditions or duration of confinement, however, it may be appropriate to submit those disputes to a jury for resolution. *See Colon v. Howard*, 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

confinement remains significant under *Sandin*. *See Colon*, 215 F.3d at 231. Significantly, although under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, *see id.* at 232 n.5, the Second Circuit generally takes the position that SHU confinement under ordinary conditions of more than 305 days rises to the level of atypicality, whereas normal SHU confinement of 101 days or less does not.[6] *See id.* at 231-32 (305 days of SHU confinement constitutes an atypical and "sufficient departure from ordinary incidents of prison life").

It is likely that Plaintiff's due process claim is deficient because of his failure to establish that he possessed, but was deprived of, a cognizable liberty or property interest; courts have consistently held that disciplinary confinement for periods similar to those involved in this instance do not rise to a level sufficient to support a procedural due process claim. *See Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) ("[T]he decisions in the Second Circuit are unanimous that keeplock . . . of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*." (internal quotation omitted)); *Zimmerman v. Seyfert*, No. 9:03-CV-1389, 2007 WL 2080517, *21 (N.D.N.Y. July 19, 2007) (noting that the plaintiff's "thirty-day disciplinary sentence in SHU does not rise to the level of an atypical and significant deprivation sufficient to create a liberty interest"); *Fullwood v. Vosper*, No. 9:99CV1586, 2007 WL 119456, *5 (N.D.N.Y. Jan. 9, 2007) (holding that "thirty-day keeplock confinement and loss of phone, package, and commissary privileges, where [the plaintiff] fails to delineate 'abnormal' conditions,

---

[6] In fact, in *Colon*, a Second Circuit panel split markedly about whether or not adoption of a 180-day "bright line" test for examining SHU confinement would be appropriate and helpful in resolving these types of cases. *See Colon*, 215 F.3d at 232-34 (Newman, J.), 235-37 (Walker & Sack, J.J., concurring in part).

is insufficient to qualify as an atypical and significant hardship").  Therefore, the Court finds that Plaintiff's thirty-day commitment in the SHU did not constitute a constitutionally cognizable liberty deprivation.

It is possible that Plaintiff is contending that his removal from the ASAT program deprived him of a liberty interest.  Likewise, the Court could construe Plaintiff's complaint to allege that the potential for the denial of parole due to his failure to complete the ASAT program amounts to a liberty interest deprivation.  Inmates, however, do not have a constitutional right to be released on parole or to participate in prison programs.  *See Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979) (no constitutionally protectable expectation of parole entitling inmate to due process safeguards); *Gissendanner v. Menifee*, 975 F. Supp. 249, 251 (W.D.N.Y. 1997) (holding that "'a prisoner does not hold a protected interest in [prison] programs'" (quoting *Deutsch v. United States*, 943 F. Supp. 276 (W.D.N.Y. 1996))).  Since an essential element of a § 1983 claim is that "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States," *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted), any due process challenge grounded in either of these theories fails to state an actionable claim under 42 U.S.C. § 1983.

Based upon its review of Plaintiff's motion for injunctive relief, the Court finds that Plaintiff has failed to allege facts that demonstrate any likelihood of success on the merits of his Fourteenth Amendment claim or any serious questions related to the merits of that claim.

### III. CONCLUSION

Accordingly, after reviewing the entire file in this matter and the applicable law and for

the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's *in forma pauperis* application is **GRANTED**.[7] The Clerk of the Court shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service on Defendants. The Clerk of the Court shall forward a copy of the summons and complaint by mail to the Office of the Attorney General of the State of New York, together with a copy of this Order; and the Court further

**ORDERS** that the Clerk of the Court shall provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's authorization form and notify that official that Plaintiff has filed his action and is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and the Court further

**ORDERS** that the Clerk of the Court shall provide a copy of Plaintiff's authorization form to the Financial Deputy of the Clerk's Office; and the Court further

**ORDERS** that Defendants or their counsel shall file a response to Plaintiff's complaint as provided for in the Federal Rules of Civil Procedure after service of process on Defendants; and the Court further

**ORDERS** that Plaintiff's motion for injunctive relief is **DENIED** without prejudice to renewal following service of the complaint and an appearance on behalf of Defendants; and the Court further

**ORDERS** that the parties shall file all pleadings, motions and other documents relating to this action with the Clerk of the United States District Court, Northern District of New York, 7th

---

[7] The Court notes that, although it has granted Plaintiff's application to proceed *in forma pauperis*, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

Floor, James Hanley Federal Building and Courthouse, 100 South Clinton Street, Syracuse, New York 13261-7367.  **A party must accompany any paper that it files with the Clerk of the Court or the Court with a certificate showing that the party has mailed a true and correct copy of that paper to all opposing parties or their counsel.  The Clerk of the Court will return, without processing, any document that it or the Court receives which does not include a certificate of service showing that the party served a copy of that document on all opposing parties or their attorneys.**  Plaintiff must comply with any requests of the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which they must make returnable before the assigned Magistrate Judge with proper allowance for notice as the Rules require.  **Plaintiff must also promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.**  The Court will decide all motions based upon the submitted papers without oral argument unless the Court orders otherwise; and the Court further

     **ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Court's Local Rules.

**IT IS SO ORDERED.**

Dated: January 22, 2008
      Syracuse, New York

                                  Frederick J. Scullin, Jr.
                                  Senior United States District Court Judge